SEAN K. KENNEDY (No. 145632)
Federal Public Defender
(E-mail: Sean_kennedy@fd.org)
JOHN LITTRELL (No. 221601)
Deputy Federal Public Defender
(E-mail: John_Littrell@fd.org)
Office of the Federal Public Defender
321 East Second Street
Los Angeles, California  90012
Telephone (213) 894-5310
Facsimile (213) 894-0081

Attorneys for Defendant
JUAN CAMPOS

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. CR 09-572-RGK |
| Plaintiff, | NOTICE OF MOTION; MOTION TO SUPPRESS EVIDENCE; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF DEFENDANT |
| v. | |
| JUAN CAMPOS, | |
| Defendant. | DATE:    November 9, 2009<br>TIME:    1:30 p.m.<br>JUDGE:  Hon. R. Gary Klausner<br>ROOM:   850 (Roybal) |

TO: ACTING UNITED STATES ATTORNEY GEORGE CARDONA, AND ASSISTANT UNITED STATES ATTORNEY KEVIN ROSENBERG:

PLEASE TAKE NOTICE that on November 9, 2009, at 1:30 p.m., or as soon thereafter as counsel may be heard, in the courtroom of the Honorable R. Gary Klausner, United States District Judge, defendant Juan Campos will bring on for hearing the following motion:

///

///

///

# **MOTION**

Defendant Juan Campos, by and through his attorney of record, Deputy Federal Public Defender John Littrell, hereby moves this Honorable Court for an order suppressing all physical evidence found during and as a result of the warrantless search of the Mazda sedan he was driving on May 12, 2009, and all evidence seized in a subsequent search of A-Vineyard Self-Storage lockers #9107 and #8212, located in Oxnard, California. This motion is made pursuant to the Fourth Amendment to the United States Constitution and is based upon the attached Memorandum of Points and Authorities, declaration of Mr. Campos, all files and records in the case, and such evidence and argument as may be presented at the hearing.

Respectfully submitted,

SEAN K. KENNEDY
Federal Public Defender

DATED: October 13, 2009          By     /s/
                                    JOHN LITTRELL
                                    Deputy Federal Public Defender

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Juan Campos is charged in a two-count indictment with possession with intent to distribute narcotics, 21 U.S.C. § 841(a)(1), and possession of a firearm during a drug trafficking offense, 18 U.S.C. § 924(c).  Trial is scheduled to commence on December 15, 2009.  The firearm and narcotics that the government intends to offer into evidence in its case in chief were obtained as a result of a warrantless traffic stop of Mr. Campos and warrantless search of his vehicle on May 12, 2009.  Based on the evidence recovered during the warrantless search, officers sought and obtained a warrant to search Mr. Campos' storage lockers, where various evidence, including methamphetamine residue, documents, and ammunition were found.

This motion challenges the constitutionality of the warrantless traffic stop and the subsequent warrantless search of the vehicle Mr. Campos was driving.  Because the search warrant for the storage lockers was based on evidence that had been illegally obtained during or as a result of the warrantless search of the vehicle, all evidence recovered from the storage lockers must also be suppressed.

### II.   STATEMENT OF FACTS[1]

On the morning of May 12, 2009, Mr. Campos was driving a silver Mazda sedan in Oxnard, California, with the permission of its owner.  Declaration of Juan Campos at ¶ 2.  Ventura County Sheriff's Officer Carlos Macias was watching him.  Officer Macias followed Mr. Campos to his mother's house.  Thereafter, Officer Macias saw Mr. Campos, accompanied by Vanessa Brashear, drive to A-Vineyard Self-Storage, a storage facility located in Oxnard, California.  At that point, Ms.

---

[1] Unless otherwise specified, these facts are derived from discovery produced by the government, including an application for a search warrant authored by Ventura County Sheriff's Deputy Carlos Macias and incident reports authored by Deputy Macias, Ventura County Sheriff's Detective Vincent Reynoso, and others.

1  Brashear was driving the car, and Mr. Campos was in the passenger seat. Mr. Campos
2  and Ms. Brashear retrieved a number of bags from the facility. They left the storage
3  facility with Mr. Campos driving the car and Ms. Brashear sitting in the passenger
4  seat. At that point, Deputy Macias directed Ventura County Sheriff's Deputy V.
5  Tinoco to pull over the vehicle to search for drugs.

6  Deputy Tinoco did so. Deputy Tinoco asked for Mr. Campos' consent to search
7  the vehicle. Mr. Campos said no.[2] Deputy Macias then instructed Deputy Tinoco to
8  conduct a "probable cause" search of the vehicle. The search revealed several items
9  of evidentiary value, including methamphetamine, various documents, a scale, United
10 States currency, and a .25 caliber handgun in the trunk of the car, and a set of keys on
11 a black lanyard that were associated with A-Vineyeard Self-Storage.

12 Based on the items recovered from the vehicle, Deputy Macias requested and
13 received a warrant to search two storage lockers at A-Vineyard Self-Storage. In his
14 application for a search warrant, Deputy Macias described the vehicle search and cited
15 the evidence recovered from the vehicle in support for his request. See Exhibit A
16 (Carlos Macias Statement of Probable Cause, dated May 12, 2009). In the storage
17 lockers, officers retrieved more items that it may attempt to introduce at trial in this
18 case, including another scale, ammunition, and various documents.

### III.   ARGUMENT

**A.   The Government Has the Burden of Proving that the Warrantless Seizure of Mr. Campos and Search of Mr. Campos' Vehicle Were Constitutional**

Because of the Fourth Amendment's explicit preference for search warrants, warrantless searches and seizures are *per se* unreasonable unless they fall within a "few specifically established and well delineated exceptions" to the warrant

---

[2] Mr. Campos' invocation of his Fourth Amendment right not to permit a warrantless search of the vehicle is not admissible at trial. See United States v. Prescott, 581 F.2d 1343, 1350-51 (9th Cir. 1978). There is no indication that Mr. Campos made any other statements of evidentiary value during the stop.

requirement. <u>Katz v. United States</u>, 389 U.S. 347, 357 (1967); <u>Thompson v. Louisiana</u>, 469 US 17, 19-20 (1984); <u>Minnesota v. Dickerson</u>, 508 U.S. 366, 372 (1993). The few exceptions to the Fourth Amendment's warrant requirement are "jealously and carefully drawn." <u>Jones v. United States</u>, 357 U.S. 493, 499 (1958). The burden is on the government – the party seeking to invoke an exception to the warrant requirement – to demonstrate that such an exception applies. <u>McDonald v. United States</u>, 335 U.S. 451, 456 (1948); <u>Mincey v. Arizona</u>, 437 U.S. 385, 390-91 (1978); <u>United States v. Huguez-Ibarra</u>, 954 F.2d 546, 551 (9th Cir. 1992).

The car that Mr. Campos was driving was seized and searched without a warrant. A warrantless seizure and search of a vehicle is permissible only where there is probable cause to believe that contraband or evidence of a crime will be found in the vehicle. <u>Ornelas v. United States</u>, 517 U.S. 690, 696 (1990).

The Government has the burden of establishing that one or more of the enumerated exceptions to the search warrant requirement should apply in this case. If the Government offers a justification for the warrantless seizure and search in its opposition, the defense will address the adequacy of those justifications in its reply.

**B.     The Evidence Located In The Vehicle Driven By Mr. Campos And the Evidence Located in the Storage Lockers Must Be Suppressed**

If the Government cannot satisfy its burden of proving that the warrantless seizure of Mr. Campos and subsequent search of the car were constitutional, all evidence recovered as a result of the arrest and search must be suppressed under the "fruit of the poisonous tree" doctrine. See <u>Wong Sun v. United States</u>, 371 U.S. 471, 485-86 (1963); <u>United States v. Thomas</u>, 211 F.3d 1186, 1192 (9th Cir. 2000). Whether evidence obtained indirectly from an unconstitutional search or seizure is a "fruit" of that event turns on whether it "has been come at by exploitation of [the primary] illegality or instead by means sufficiently distinguishable to be purged of the primary taint." <u>Wong Sun</u>, 371 U.S. at 488 (quoting Maguire, Evidence of Guilt 221

...

(1951)).  Once a defendant has established a factual nexus between the illegality and the evidence, the burden is on the government to show that taint has been sufficiently diluted.  See United States v. Patzer, 277 F.3d 1080, 1086 (9th Cir. 2002).

In this case, the evidence seized from the vehicle is the direct result of the warrantless seizure and search of the vehicle.  The evidence that was later seized from Mr. Campos' storage lockers was also obtained as a direct result of the unlawful seizure and search of the vehicle because the warrant authorizing the search of the storage locker was based primarily on evidence that was obtained from the vehicle.  See United States v. Vasey, 834 F.2d 782, 788 (9th Cir. 1987).

## IV.   CONCLUSION

The burden is on the government to establish that the warrantless seizure and search of the vehicle driven by Mr. Campos on May 12, 2009, and the search of Mr. Campos' storage locker later that day, satisfies the Fourth Amendment to the United States Constitution.  If the government fails to meet its burden of proof, all of the evidence found in the vehicle and the storage locker must be suppressed.

Respectfully submitted,

SEAN K. KENNEDY
Federal Public Defender

DATED:   October 13, 2009          By_____/s/_____
                                    JOHN LITTRELL
                                    Deputy Federal Public Defender

# EXHIBIT A

Case 2:09-cr-00572-RGK	Document 17	Filed 10/13/2009	Page 7 of 17

STATE OF CALIFORNIA - COUNTY OF VENTURA

# SEARCH WARRANT AND AFFIDAVIT
## (AFFIDAVIT)

VENTURA
SUPERIOR COURT
**FILED**
MAY 14 2009
MICHAEL D. PLANET
Executive Officer and Clerk
BY_____, Deputy
BOBBIE DEL TORO

**Carlos Macias** swears under oath that the facts expressed by him in the attached and incorporated **Statement of Probable Cause** are true and that based thereon he has probable cause to believe and does believe that the property described below is lawfully seizable pursuant to Penal Code Section 1524 and sections 11470, 11471 and 11492 of the Health and Safety Code, as indicated below, and that said property is now located at the location(s) set forth below. Wherefore, affiant requests that this Search Warrant and Seizure Order be issued.

_____
(Signature of Affiant)

## (SEARCH WARRANT)

**THE PEOPLE OF THE STATE OF CALIFORNIA TO ANY DEPUTY SHERIFF, POLICEMAN OR PEACE OFFICER IN THE STATE OF CALIFORNIA:** proof by affidavit having been made before me by **Carlos Macias** that there is probable cause to believe that the property described herein may be found at the locations set forth herein and that it is lawfully seizable pursuant to Penal Code Section 1524 as indicated below by "X"(s) in that it:

- ☐ was stolen or embezzled,
- ☒ was used as the means of committing a felony,
- ☒ is possessed by a person with the intent to use it as means of committing a public offense or is possessed by another to whom he or she may have delivered it for the purpose of concealing it or preventing its discovery,
- ☒ tends to show that a felony has been committed or that a particular person has committed a felony,
- ☐ tends to show that sexual exploitation of a child, in violation of P.C. Section 311.3, has occurred or is occurring;

**YOU ARE THEREFORE COMMANDED TO SEARCH:**

1. **3500 E. Vineyard Avenue, City of Oxnard, County of Ventura, State of California;** the building is storage facility called **"A-Vineyard Self Storage."** The building is a two-story storage facility with numerous storage sheds. It is located on the east side of Vineyard Avenue two businesses north of the intersection on Simon Way and Vineyard. The facility is marked with a sign the reads "A-Vineyard Self Storage" and lists the address 3500 E. Vineyard Avenue, Oxnard. I request storage sheds **9107** and **8212**. The numbers to each storage shed are directly over the doors.

**AND IN THE VEHICLE(S) DESCRIBED AS:**

1. **5LTH736 (California License);** Further described as a 2004 silver Mazda 6 registered to Katherine Montanez at 1444 S. "F" Street, Oxnard, California.

1

**FOR THE FOLLOWING PROPERTY:**

1. Methamphetamine.
2. Any other controlled substance.
3. Paraphernalia used in the processing, packaging, weighing, and preparation of controlled substances, including, but not limited to, cutting/reducing agents, weighing devices, bindles, vials, baggies, measuring devices, screens, filters, mirrors, razors, and/or devices commonly associated with the storage or use of drugs.
4. Books, ledgers, accounts, telephone answering machines, and any correspondence tending to show the identity of persons acquiring controlled substances at the described residence, or from it's occupants, and/or tending to show the sales of such contraband. Searching officers are directed to answer the telephone and converse with the callers who appear to be calling in regards to drug sales and note and record the conversations without revealing their true identity; also, to listen to, note and record any message left on any answering device or tape recorder therein.
5. Items of personal property tending to show the identity of persons in control of said premises, including rent receipts, canceled mail envelopes, photographs and keys.
6. U.S. currency, currencies of other countries, all negotiable instruments, other financial records, checkbooks, savings account books, safety deposit box keys tending to show where proceeds from narcotic transactions are being kept and any combination safes or locked boxes therein.
7. Receipts, loan applications, credit reports, real estate purchase contracts, grant deeds/deeds of trust, and other paperwork tending to show where, and in what names, proceeds from narcotics transactions have been invested.
8. Electronic digital pagers, cellular telephones and police scanners. Officers are permitted to look at the stored telephone numbers in the cellular telephones and or pagers. Officers are permitted to look at registers of ingoing and outgoing telephone numbers and document said telephone numbers, and to answer incoming telephone calls, converse with callers who appear to be calling in reference to drug trafficking activity and to note and record the conversation without revealing any true identity. If such items are located, they may be collected and examined at an alternate location by a computer forensic expert if such an examination is deemed necessary by the investigating officer.
9. Computer records, hard disks and soft disks, thumb drives, flash drives, or other computer storage devices, tending to show where, and in what names, proceeds from narcotic transactions have been invested.
10. Any surveillance equipment, including but not limited to, surveillance cameras, video cameras, closed circuit television equipment, surveillance monitors, police scanners, walkie-talkies, intercom systems, videotapes, DVD's and CD's which show evidence of narcotic activity. Officers are instructed to view videotapes, photographs, digital photographs, digital cameras, CD's and DVD's for evidence of narcotics activity.
11. Articles of personal property tend to establish and document sales of controlled substances. These articles consist in part of and include, but are not limited to; buyer list, seller list, and records of sales, including personal telephone books, address books, telephone bills, papers and/or writings of drug trafficking activity.
12. Computer storage devices, including computer storage tapes, optical disks, floppy disks, flash memory cards, compact disks, hard disk drives, and other electronic storage media; Authorized officers are directed to conduct an off premises forensic examination of any seized media for evidence of drug trafficking and the sales of controlled substances. Once the forensic examination of the media has been completed, and the affiant determines the media is no longer needed as evidence, the media can be released back to the owner.

CAMPOS 004

13. Any property determined to be stolen by serial number, victim identification or any other type of identification.
14. Any and all dangerous and illegal weapons, including firearms, and any miscellaneous gun pieces, ammunition, original packaging, photographs of firearms and any paperwork showing purchase, storage and/or disposition.

**AND TO SEIZE IT IF FOUND** and bring it forthwith before me, or this court, at the courthouse of this court. This Search Warrant and incorporated Affidavit was sworn to and subscribed before me this 12th day of May, 2009, at 10:70 A.M. /(P.M.) Wherefore, I find probable cause for the issuance of this Search Warrant and do issue it.

**NIGHT SEARCH REQUESTED:** (YES)  NO
**NIGHT SEARCH APPROVED:** (YES)  NO

_____
Judge of the Superior Court, Ventura Judicial District

3

CAMPOS 005

## STATEMENT OF PROBABLE CAUSE

I, Carlos Macias, being duly sworn, declare and state as follows:

I am a Peace Officer of the State of California and I am currently employed by the Ventura County Sheriff's Department. I have been so employed in excess of nineteen years. I am currently assigned to the Ventura County Sheriff's' Narcotics Unit as a narcotics investigator. I have been assigned to the narcotics unit for approximately seven years and was previously assigned in 1994 as a narcotic investigator with the Sheriff's Department for one year.

During my employment with the Ventura County Sheriff's Department, I have received hundreds of hours of training in the investigation of narcotics. The Ventura County Police and Sheriff's Academy, the California Department of Justice, the United States Drug Enforcement Administration, the California Narcotics Officer's Association, and the Western States Information Network provided this training. I have also received training from the California Narcotic Officers Association in the area of Money Laundering and Financial Fraud. This training dealt with the detection and investigative aspects of narcotics including use, manufacturing, transportation, smuggling, packaging, possession for sales, and sales of narcotics, including methamphetamine. Additionally, this training has included covert surveillance techniques, counter-surveillance techniques, controlled narcotic buy programs, informant handling, and drug trafficking trends.

Throughout my employment in law enforcement and with the Ventura County Sheriff's Department, I have had the opportunity to interact and observe numerous subjects who had been arrested and booked for narcotic violations. I have had the opportunity to observe the effects of narcotics on those subjects and examine the narcotics and paraphernalia confiscated. I have made arrests and/or assisted in arrests of individuals for narcotics violations, which include arrests for under the influence, possession of narcotics, possession for sales, and sales of narcotics, and the transportation and manufacturing of narcotics.

Since my assignment as a narcotics investigator, I have conducted and/or participated in numerous narcotic investigations. I have executed and/or assisted in the execution of a number of search warrants where narcotics were seized and arrests were made. I have developed contacts with narcotic users and informants. I have discussed with them the various aspects of manufacturing, smuggling techniques, packaging, transportation, and sales of narcotics, and the transportation and manufacturing of narcotics and the methods that narcotics traffickers use to conceal their monies. I have certification from the California Attorney General in the practical, technical, and legal aspects of court ordered wiretaps as authorized in chapter 1.3 commencing with section 629 of the California Penal Code. I am currently the basic narcotics instructor at the Ventura County Sheriff's and Police Academy.

During the years 2008 and 2009 I have been investigating a subject named Juan "Fat Juan" Campos" date of birth 01-08-70. I have received information from numerous Confidential Informants that Juan Campos sells and uses methamphetamine. I have also made controlled purchases of methamphetamine from Campos and had probable cause to arrest Campos for sales. I received information from Detective M. Beckett that Campos is running a stolen property operation from a storage facility somewhere in the El Rio or Saticoy area. Detective Beckett also told me that Campos holds large quantities of methamphetamine in this storage facility. Detective Beckett received this informant from and unrelated Confidential Informant.

On 05-12-09, I saw Campos driving next to me in a silver Mazda 6 sedan with the California license plate number of 5LTH736. I knew it was Campos because I had seen numerous photos of

Campos, seen Campos on numerous surveillances and personally arrested Campos. I formed a surveillance team and Campos was followed to his mother's house on Halcon Street in Oxnard. Campos was there for a short time then left in the silver Mazda but this time an unknown female was driving the car. Campos was in the passenger's seat. Campos and the female were followed away from the house and towards the area of El Rio. As the surveillance team was following the vehicle it made a series of turns that I believe from my training and experience was counter surveillance driving.

The Mazda would be driving in the number one lane and quickly move over to the number two lane to let vehicles pass. The vehicle then approached the intersection of Gonzales Road and Rice Avenue and had ample opportunity to move into the left hand turn pocket. The Mazda stayed in the number one lane and waited for the light to turn green. When the traffic light turned green the vehicle quickly turned left across two left hand turn lanes and went west bound on Gonzales Road. The vehicle accelerated to a very high rate of speed as it moved from the number one lane to the number two lane. The Mazda then turned down a side street and drove through a parking lot and exited the other side onto surface streets. The Mazda then accelerated north on Rose Avenue and was lost in the area of El Rio.

I know from following Campos on numerous occasions that he would only drive like this when he was in route to a narcotic transaction. Campos would obey all traffic laws when going to a store and driving from place to place. Because of the way the Mazda was driving I suspected Campos was driving somewhere where he did not want to be followed. I have personally witnessed hundreds of narcotics transactions. Drug dealers often utilize "counter-surveillance" driving in order to detect and evade law enforcement. I have seen hundreds of people do this before and after drug transactions.

On a prior surveillance Campos was survielled to the area of "A-Vineyard Self Storage" located at 3500 E. Vineyard, Oxnard, Ca. He was survielled to the storage facility but an exact storage shed was unable to be obtained. On today's date, I drove to the storage facility and went inside. I saw Campos and the unknown female parked in front a storage shed located in the 9100 range. I could not see the exact number of the shed. A short while later Campos moved his vehicle in front of the two-storage part of the facility and I followed him to the second floor of the facility. I saw Campos in the area of the 8200 sheds but again I could not make the exact shed number.

Since I could not watch the shed Campos was in without being detected, I went down to the area where his Mazda was parked and watched the vehicle. Approximately 45 minutes later, I saw Campos and the unknown female bring a trolley to their vehicle that had numerous black bags on it. Campos began to unload the bags into the trunk of the Mazda. As Campos was loading the vehicle, I saw that he was holding a set of keys that were on a long black lanyard. After loading the vehicle, Campos got into the drivers seat and the unknown female got into the passenger's seat. They both drove out of the area. I had Deputy V. Tinoco conduct a traffic stop on the vehicle which was registered to a Katherine Montanez.

During the stop, suspect Campos gave a false name. Deputy Tinoco requested permission to search the vehicle, however suspect Campos said no. I instructed Deputy Tinoco to conduct a probable cause search of the vehicle. I believed that there were narcotics located inside based on my training and experience, the observations I made of his driving, the bags that I saw him place in the car and prior information I had from informants. It was my belief that if the search did not occur we would likely lose evidence. Deputy Tinoco searched the vehicle and located 5 ounces of suspected methamphetamine in the bags that I saw him with at the storage location. Along with the narcotics, Deputy Tinoco located a scale, additional packaging materials and thousands of dollars in cash. Deputy Tinoco also located a set of keys on a black lanyard. In addition to the methamphetamine, numerous computers and suspected stolen property were found inside the vehicle. It is my opinion, based on my training and experience,

that 5 ounces of methamphetamine with packaging materials, a scale and a large sum of cash is consistent with the sales of methamphetamine a felony violation of California Health and Safety Code section 11378.

I took the keys that were located on the black lanyard back to the storage facility. I obtained an accounts receivable sheet from the facility manager. I saw that shed #9107 and #8212 were registered to Juan Campos. These two lockers are in the same area where I had seen Campos earlier. Campos' account is current through 5/28/2009.

During the service of narcotic search warrants, it is routine to find persons at the location that are not specifically named in the affidavit. These persons are routinely found to be involved in the illegal drug related activity. It has been my experience that it is common for visitors, friends, room-mates, other residents and/or family members to participate and/or conceal criminal activity taking place at the time of service of the search warrant. Furthermore, because of the lapse of time between the knowledge of the presence of law enforcement, and the actual entry into the residence/location and detention of the occupants by law enforcement, it is my belief that target subjects will sometimes give their narcotics/illegal drugs, paraphernalia and/or other evidence to other people to hold.

I am particularly familiar with methods employed by large Mexican narcotics organizations, and the sophisticated tactics that they routinely use to attempt to thwart any investigation of their illegal drug organizations. My knowledge of these tactics (which include the use of debit calling cards, public telephones, cellular telephone technology, beepers, counter-surveillance, elaborately planned smuggling schemes tied to legitimate businesses, false or fictitious identities, extremely sophisticated hidden vehicle traps/compartments, using vehicles registered in the names of others, and coded communications and conversations) has been particularly useful and relevant to this investigation.

I have assisted with numerous investigations, both state and federal, that have involved court ordered pen registers and court-authorized interception of wire, oral, and electronic communications of specified unlawful activities and conspiracies associated with criminal offenses. In working many long-term narcotic investigations, especially as related to conspiracies, I know that time-frames which could typically be considered stale, are not stale due to the overall information being intercepted, reviewed and corroborated which reflects the on-going activities of the drug trafficking organization (DTO).

It is my opinion, based on formal training and my experience in serving and assisting in the service of warrants, that persons involved in illegal transactions often keep records of these types of transactions in their homes, businesses, and automobiles. These records consist of buyer lists, supplier lists, "buy and owe" sheets, debit/credit lists, and address/telephone lists; and are kept by subjects whether or not the he/she is in possession of illegal property at any given moment; and are permanently possessed by subjects in much the same way a legitimate business will maintain records and tools of its trade whether or not the business has a particular level of inventory at any given time.

It has been my experience and training that paraphernalia such as weighing devices, cutting material and containers are permanently possessed by narcotic dealers in much the same way a business will maintain records and tools of its trade whether or not the business has a particular item in inventory on a given day.

It has also been my experience narcotic dealers will often trade property for narcotics in lieu of money, even though the narcotics dealer may have knowledge the property is stolen. It is also my experience that narcotic dealers will also, after receiving funds from the purchase of sold narcotics, will

take those funds and place them in a savings account or safety deposit box and keep bankbooks and keys for these items in their residence. These funds, when removed, are almost always used for the purchase of more narcotics.

It has been my experience that narcotic buyers will telephone and/or page the narcotics dealer to check on the availability of said narcotics for the purpose of purchasing narcotics. Valuable and relevant evidence may often be obtained by answering a suspect's telephone and conversing with the caller during a search.

It is also my experience that narcotic dealers/users will possess photographs (digital and standard) and/or videocassette recorder (V.C.R.) tapes, DVD's, and/or any other electronic media depicting themselves, or others, in violation of health and safety code violations for possessing and/or using controlled substances, and possession of the controlled substances for sale.

It has been my experience that narcotics dealers will often set up surveillance systems in order to watch for people who may want to rob them. The surveillance equipment is also utilized to watch for possible law enforcement activity. The equipment utilized is often video cameras, closed circuit television systems, police scanners and other surveillance equipment.

It is also my experience that persons who sell and/or possess narcotics frequently use their vehicles to transport and secrete quantities of narcotics and associated paraphernalia. Narcotic traffickers usually keep currency and money derived from drug sales in their residence and within their vehicles.

It has also been my experience that narcotic dealers will use electronic digital pagers and cellular phones to facilitate narcotic transactions and avoid detection by law enforcement. Valuable and relevant evidence may also be obtained by reviewing the call records and other information within the suspect's telephone/s and/or other electronic devices. Narcotic dealers will also use police scanners to monitor police activities to avoid arrest.

It is also my experience that narcotic dealers will possess on their person and/or on their premises, illegal/dangerous weapons and/or firearms to protect their drugs and money from would-be thieves and to use the weapons in an offensive manner against law enforcement officers. It has been my experience that narcotics dealers will keep the above listed evidence in their residences, businesses, vehicles and any other location where they store, sell or conceal their narcotics activity. My experience is that evidence of their narcotic activity may often be found in locations even if they do not actually store or sell the narcotics from that location.

**It is also my experience that people that engage in the trafficking and storage of illegal drugs often utilize storage facilities to conceal evidence of their narcotics activity. It is very common for investigating officers to locate keys and paper work during the execution of search warrants that clearly indicate the use of these facilities. These facilities offer the traffickers some degree of protection and anonymity. They use these facilities also because they know that law enforcement often has a difficult time utilizing surveillance techniques inside these facilities.**

It is further my opinion that the seizure of these items will provide evidence of the events reported in this affidavit and that the items have and will be used in the commission of felony transactions. It is further my experience and opinion that the release of information contained in portions of an affidavit can adversely effect an on-going investigation, endanger officers, an/or result in the destruction of evidence.

7

It is requested that the informant's identity remain confidential because disclosure of his/her name would jeopardize his/her safety and/or negate his/her future usefulness to law enforcement in detecting criminal activity.

I am requesting that this warrant be endorsed for night service. After the stop, I returned to my office to compile the information for this warrant. The warrant was not completed until almost 10 p.m.. There is no useful purpose in requiring police personnel to stay at the location until 7:00 am. It would be an undue consumption of resources. Further, it is very unlikely that any person is residing in the storage locker, so there is no point in waiting until 7:00 am tomorrow.

Based on my training and experience, I believe that Juan Campos has committed felony violations of Health and Safety Code sections 11378, possession for sales of illegal drugs. I further believe that there will be further evidence of the suspect's narcotics trafficking inside of 3500 E. Vineyard Avenue locker numbers 9107 and 8212, Oxnard, California. I believe that the items listed 1-14 on the attached and incorporated search warrant will show that the suspect is engaged in the trafficking of methamphetamine. Wherefore it is respectfully prayed that the attached search warrant be issued.

CAMPOS 010

1 <u>DECLARATION OF JUAN CAMPOS</u>

3   I, Juan Campos, hereby state and declare as follows:

5   1.   I am the defendant in <u>United States v. Juan Campos</u>, CR 09-572-RGK.

6   2.   On May 12, 2009, I was driving a silver Mazda 6 sedan in Oxnard, California.  The owner of the car, Katherine Montanez, had given me permission to drive the car that day.  My personal belongings were inside the car.  I believed that both the passenger compartment and the trunk of the vehicle, as well as the bags within those spaces, were private and I intended to maintain them as private.

11   3.   On May 12, 2009, I was renting two storage lockers, Nos. #9107 and 8212, from A-Vineyard Self Storage in Oxnard, California.  I had personal belongings in both storage lockers.  I had paid the necessary fees to rent the lockers and I had locked the storage lockers in order to maintain the belongings within them secure.  I believed that the storage lockers were private, and that my personal belongings within those storage lockers, in containers and otherwise, were private.

18   I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

21   DATED: October 13, 2009       _____
                                   JUAN CAMPOS

<u>DECLARATION OF JOHN LITTRELL</u>

I, John Littrell, hereby state and declare as follows:

1. I am a Deputy Federal Public Defender in the Central District of California. I represent Juan Campos, the defendant in <u>United States v. Juan Campos</u>, CR 09-572-RGK.

2. I drafted the DECLARATION OF JUAN CAMPOS, submitted in support of the motion to suppress evidence in this case, based on my interview with Mr. Campos regarding the facts of this case. I submit it without Mr. Campos' signature because Mr. Campos is incarcerated in San Bernardino County. The United States Marshals will not move prisoners from San Bernardino County on Mondays, or Tuesdays where the previous Monday was a court holiday. Therefore, I will not be able to obtain Mr. Campos' signature prior to today's filing deadline. I will file a signed version of his declaration at or prior to the hearing in this matter.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

DATED: October 13, 2009        _____/s/_____
                               JOHN LITTRELL
                               Deputy Federal Public Defender