1 | GEORGE S. CARDONA
Acting United States Attorney
2 | CHRISTINE C. EWELL
Assistant United States Attorney
3 | Chief, Criminal Division
KEVIN S. ROSENBERG (SBN 174593)
4 | Assistant United States Attorney
Deputy Chief, OCDETF Section
5 |   1400 United States Courthouse
    312 North Spring Street
6 |   Los Angeles, California 90012
    Telephone: (213) 894-4849
7 |   Facsimile: (213) 894-0142
    E-mail: Kevin.Rosenberg@usdoj.gov
8 |
Attorneys for Plaintiff
9 | UNITED STATES OF AMERICA

10

11                   UNITED STATES DISTRICT COURT

12                FOR THE CENTRAL DISTRICT OF CALIFORNIA

13 | UNITED STATES OF AMERICA,    )   CR 09-572-RGK
                                  )
14 |             Plaintiff,        )   <u>GOVERNMENT OPPOSITION TO</u>
                                  )   <u>DEFENDANT'S MOTION TO SUPPRESS</u>
15 |                               )   <u>EVIDENCE; MEMORANDUM OF POINTS</u>
                 v.               )   <u>AND AUTHORITIES; DECLARATION</u>
16 |                               )   <u>OF CARLOS MACIAS</u>
                                  )
17 | JUAN CAMPOS,                  )   Hearing Date: November 9, 2009
                                  )   Hearing Time: 1:30 p.m.
18 |             Defendant.        )
                                  )
19 | _____ )

20      Plaintiff United States of America, through its counsel of

21 record, the United States Attorney for the Central District of

22 California, hereby files its Opposition to the motion of

23 defendant Juan Campos to suppress evidence obtained following a

24 traffic stop and warrantless probable cause search of a vehicle

25 he was driving.  The government's Opposition is based on the

26 ///

27 ///

28 ///

1 | attached memorandum of points and authorities, the attached
2 | declaration of Carlos Macias, the files and records in this case,
3 | and any additional argument or evidence that it may present at a
4 | hearing of this matter.
5 | DATED: October 20, 2009.          Respectfully submitted,
6 |                                   GEORGE S. CARDONA
                                      Acting United States Attorney
7 |
                                      CHRISTINE C. EWELL
8 |                                   Assistant United States Attorney
                                      Chief, Criminal Division
9 |
10 |
                                             /S/
11 |                                   ─────────────────────────
                                      KEVIN S. ROSENBERG
                                      Assistant United States Attorney
12 |
                                         Attorneys For Plaintiff
13 |                                      UNITED STATES OF AMERICA

```
 1                         TABLE OF CONTENTS
 2                                                              PAGE
```

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . ii

**MEMORANDUM OF POINTS AND AUTHORITIES** . . . . . . . . . . . . 1

I.   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . 1

II.  STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . 2

II.  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . 6

     OFFICERS LAWFULLY STOPPED THE MAZDA BECAUSE
     THEY BELIEVED DEFENDANT WAS ENGAGED IN A CRIME
     AND THE SUBSEQUENT SEARCH WAS JUSTIFIED UNDER
     THE AUTOMOBILE EXCEPTION TO THE WARRANT
     REQUIREMENT . . . . . . . . . . . . . . . . . . . . . 6

III. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . 11

DECLARATION OF CARLOS MACIAS . . . . . . . . . . . . . . . . 12

TABLE OF AUTHORITIES

PAGE(S)

**FEDERAL CASES**:

California v. Acevedo,
  500 U.S. 565 (1991) . . . . . . . . . . . . . . . . . . . . 8, 10

Davis v. United States,
  409 F.2d 458 (D.C. Cir. 1969) . . . . . . . . . . . . . . . . 8

Illinois v. Gates,
  462 U.S. 213 (1983) . . . . . . . . . . . . . . . . . . . . . 8

Terry v. Ohio,
  392 U.S. 1 (1968) . . . . . . . . . . . . . . . . . . . . . . 6

Texas v. Brown,
  460 U.S. 730 (1983) . . . . . . . . . . . . . . . . . . . . . 8

United States v. Castillo,
  866 F.2d 1071 (9th Cir. 1988) . . . . . . . . . . . . . . . . 8

United States v. Curtis,
  562 F.2d 1153 (9th Cir. (1977)) . . . . . . . . . . . . . . 11

United States v. Del Vizo,
  918 F.2d 821 (9th Cir. 1990) . . . . . . . . . . . . . . . . 9

United States v. Fouche,
  776 F.2d 1398 (9th Cir. 1985) . . . . . . . . . . . . . . 8, 10

United States v. Gil,
  58 F.3d 1414 (9th Cir. 1995) . . . . . . . . . . . . . . . . 7

United States v. Leon,
  468 U.S. 897 (1984) . . . . . . . . . . . . . . . . . . . . 11

United States v. Lopez-Soto,
  205 F.3d 1101 (9th Cir. 2000) . . . . . . . . . . . . . . . . 7

United States v. Mariscal,
  285 F.3d 1127 (9th Cir. 2002) . . . . . . . . . . . . . . . . 6

United States v. Michael R.,
  90 F.3d 340 (9th Cir. 1996) . . . . . . . . . . . . . . . . . 7

United States v. Ocampo,
  937 F.2d 485 (9th Cir. 1991) . . . . . . . . . . . . . . . 11

United States v. Rodriguez,
  869 F.2d 479 (9th Cir. 1989) . . . . . . . . . . . . . . . . 9

TABLE OF AUTHORITIES (Cont'd.)

PAGE(S)

**FEDERAL CASES**:

<u>United States v. Ross</u>,
    456 U.S. 798 (1982) . . . . . . . . . . . . . . . . . . . 8

<u>United States v. Sokolow</u>,
    490 U.S. 1 (1989) . . . . . . . . . . . . . . . . . . . . 7

<u>United States v. Sutton</u>,
    794 F.2d 1415 (9th Cir. 1986) . . . . . . . . . . . . 7, 11

<u>United States v. Tionq</u>,
    224 F.3d 1136 (9th Cir. 2000) . . . . . . . . . . . . . . 7

<u>United States v. Vizcarra-Martinez</u>,
    66 F.3d 1006 (9th Cir. 1995) . . . . . . . . . . . . 8, 11

**FEDERAL STATUTES**:

Title 21, United States Code::

    Section 841(a)(1), (b)(1)(A) . . . . . . . . . . . . . . 1

Title 18, United States Code:

    Section 924(c) . . . . . . . . . . . . . . . . . . . . . 1

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.

INTRODUCTION

Defendant Juan Campos ("defendant") is charged with one count of possession of approximately 188 grams of actual methamphetamine with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and one count of possession of a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c).  Defendant moves to suppress evidence obtained as a result of a May 12, 2009 traffic stop, a warrantless probable cause search of a Mazda he was driving, and a subsequent search of his storage lockers pursuant to a State of California search warrant.  Although defendant has not provided any specific legal or factual basis for his motion, the Court should deny defendant's motion.

Based on law enforcement officer's collective knowledge of defendant's past drug dealing and his conduct the day of the search, officers had probable cause to believe that defendant was engaged in a crime when they stopped the Mazda and that defendant was in possession of narcotics at the time they searched the Mazda.  Thus, the officer's stop of the Mazda was lawful and their subsequent search of the Mazda was lawful under the automobile exception to the Fourth Amendment's search warrant requirement.  Because officers lawfully searched the Mazda, the search warrant they obtained later that day for defendant's storage lockers based, in part, on evidence obtained from the Mazda, should not be suppressed.

II.

STATEMENT OF FACTS

Since 2008, Ventura County Sheriff's Department Detective Carlos Macias ("Det. Macias") had been investigating defendant for narcotics trafficking. (Macias Decl. at ¶ 4). Prior to the May 12, 2009 challenged search Det. Macias had received information from reliable informants that defendant sold methamphetamine and also made controlled buys of methamphetamine from defendant using informants. (Id.). Additionally, on December 11, 2008, detectives surveilled defendant and saw him engage in a hand to hand drug deal with a woman. (Id.). That day officers stopped a woman immediately after she met with defendant and ultimately found approximately 1/4 ounce of methamphetamine on her person. (Id.). Based on his training and experience, Det. Macias believed that defendant sold methamphetamine to this woman and had probable cause to arrest defendant for methamphetamine sales. (Id.). Prior to the challenged search, Det. Macias had also learned from another detective that, according to a reliable informant, defendant was "running a stolen property operation from a storage facility somewhere in the El Rio or Saticoy area" and defendant stored "large quantities of methamphetamine in this storage facility." (Id.).

On May 12, 2009, Det. Macias saw defendant driving next to him in a silver Mazda 6 sedan. (Id. at ¶ 5). Det. Macias recognized defendant because he had seen numerous photos of defendant, had seen defendant on several surveillance operations, and personally arrested defendant. (Id.). Det. Macias formed a

surveillance team which followed defendant to his mother's house in Oxnard where defendant stayed for a short period of time. (<u>Id.</u>). Defendant and a woman later identified as Vanessa Brashear left the house in the Mazda. (<u>Id.</u>). Brashear was driving and defendant was in the passenger's seat. (<u>Id.</u>).

Det. Macias and other officers followed defendant and the female away from the house and towards the area of El Rio. (<u>Id.</u> at ¶ 6). While following the Mazda, Det. Macias and officers saw the Mazda make a series of turns that Det. Macias believed from his training and experience were counter surveillance driving. (<u>Id.</u>). More specifically, while conducting surveillance of the Mazda the following occurred:

(1) The Mazda was driving in the number one lane and quickly moved over to the number two lane to let vehicles pass.

(2) The Mazda then approached the intersection of Gonzales Road and Rice Avenue as the light was turning red. The driver had ample opportunity to move into the left hand turn pocket. The Mazda stayed in the number one lane and waited for the light to turn green.

(3) When the traffic light turned green the vehicle quickly turned left across two left hand turn lanes and went west bound on Gonzales Road.

(4) The Mazda accelerated to a very high rate of speed and moved from the number one lane to the number two lane several times for no apparent reason.

(5) The Mazda then turned down a side street and drove through a parking lot and exited the other side onto surface streets.

1          (6) The Mazda then accelerated north on Rose Avenue and
2 was lost in the area of El Rio.
3 (Id.).
4     A short while later Det. Macias drove to "A-Vineyard Self
5 Storage" located at 3500 E. Vineyard in Oxnard and went inside.
6 (Id. at ¶ 8).  Det. Macias went to this location because
7 defendant had been surveilled to the area of this storage
8 facility on January 14, 2009.  (Id.).  While at the storage
9 facility on May 12, 2009, Det. Macias saw defendant and Brashear
10 parked in front a storage locker located in the 9100 range, but
11 Det. Macias could not see the exact number of the locker where
12 defendant and Brashear were standing.  (Id.).  A short while Det.
13 Macias saw defendant move the Mazda in front of a two-story
14 building located on the facility.  (Id.).  Det. Macias followed
15 defendant to the second floor and saw defendant in the area of
16 the 8200 lockers, but could not identify which exact storage
17 locker defendant was near.  (Id.).
18     For fear of being spotted by defendant, Det. Macias went
19 down to the area where the Mazda was parked and watched the
20 Mazda.  (Id. at ¶ 9).  Approximately 45 minutes later, defendant
21 and Brashear brought a trolley loaded with several black bags to
22 the Mazda.  (Id.).  Defendant began to unload the bags into the
23 Mazda's trunk.  (Id.).  Det. Macias saw defendant holding a set
24 of keys that were on a long black lanyard as he was unloading the
25 bags into the trunk.  (Id.).
26     Det. Macias saw defendant talking to Brashear and saw him
27 hand Brashear the keys on the black lanyard.  (Id. at ¶ 10).
28 Brashear then walked back into the storage facility with the keys

1  and returned a few minutes later carrying small black bag.
2  (Id.).  Brashear handed the bag and keys to defendant.  (Id.).
3  Defendant took the black bag and shoved it into a white plastic
4  trash bag with clothes inside.  (Id.).

5      After loading the vehicle, defendant got into the drivers
6  seat and Brashear got into the passenger's seat.  (Id. at ¶ 11).
7  They both drove out of the area.  (Id.).  Det. Macias instructed
8  Ventura County Sheriff's Department Deputy V. Tinoco to conduct a
9  traffic stop on the Mazda.  (Id.).  During the stop, defendant
10 gave a false name and refused to consent to a search of the
11 Mazda.  (Id.).

12     Det. Macias then instructed Deputy Tinoco to conduct a
13 probable cause search of the vehicle because he believed that
14 defendant had narcotics in the Mazda.  (Id. at ¶ 12).  Det.
15 Macias based this belief on his training and experience, the
16 manner in which Brashear was driving the Mazda that day, the bags
17 defendant was loading into the Mazda, the prior information he
18 had from informants regarding Campos's drug trafficking
19 activities, and his use of a storage facility to store narcotics.
20 (Id.).  Det. Macias believed that if officers did not search the
21 Mazda evidence would likely be lost.  (Id.).

22     Upon searching the Mazda officers and deputies recovered
23 approximately six ounces of methamphetamine in a small leather
24 backpack next to a gray backpack in the back seat.  (Id. at
25 ¶ 13).  In the same bag as the methamphetamine, a detective
26 recovered operational gram narcotics scales, packaging material,
27 measuring spoons, smoking pipes, and the keys on the black
28 lanyard Det. Macias had seen earlier.  (Id.).  Detectives also

recovered $5,905 in cash in the gray backpack. (Id.). Detectives found an unloaded Ruger 9 millimeter handgun and DMV paperwork in defendant's name in a black bag in the trunk. (Id.). The black bag was shoved in a white plastic trash bag with clothes. (Id.). Detectives also recovered numerous computers and suspected stolen property inside the Mazda. (Id.). That day Det. Macias obtained a State of California search warrant based, in part, on information obtained from a search of the Mazda. (Def. Mot., Ex. A at 4-6).

## II.

## ARGUMENT

**OFFICERS LAWFULLY STOPPED THE MAZDA BECAUSE THEY BELIEVED DEFENDANT WAS ENGAGED IN A CRIME AND THE SUBSEQUENT SEARCH WAS JUSTIFIED UNDER THE AUTOMOBILE EXCEPTION TO THE WARRANT REQUIREMENT**

The initial stop of the Mazda was lawful because officers believed defendant was engaged in a crime, namely, possession of narcotics. Similarly, the subsequent search of the Mazda was justified by the automobile exception to the warrant requirement because the collective knowledge of the investigating officers provided probable cause to believe that defendant possessed narcotics inside the vehicle. As a result, the Court should deny defendant's motion to suppress.

Law enforcement officers may stop an individual if, under the totality of circumstances, they can point to articulable facts which support a reasonable suspicion that the person stopped is engaging in or is about to engage in a crime or has violated traffic laws. Terry v. Ohio, 392 U.S. 1, 27 (1968); United States v. Mariscal, 285 F.3d 1127, 1130 (9th Cir. 2002)

(only reasonable suspicion required for "investigative traffic stops").  "Reasonable suspicion is formed by 'specific, articulable facts which, together with objective and reasonable inferences, form the basis for suspecting that the particular person detained is engaged in criminal activity.'"  <u>United States v. Lopez-Soto</u>, 205 F.3d 1101, 1105 (9th Cir. 2000) (quoting <u>United States v. Michael R.</u>, 90 F.3d 340, 346 (9th Cir. 1996)).  The level of suspicion needed for a stop is less demanding than that for probable cause and considerably less than proof of wrongdoing by a preponderance of the evidence.  <u>United States v. Sokolow</u>, 490 U.S. 1, 7 (1989).  Furthermore, an officer is entitled to rely on his training and experience in drawing inferences from the facts he observes, so long as those inferences must also "'be grounded in objective facts and be capable of rational explanation.'" <u>Lopez-Soto</u>, 205 F.3d at 1106.  Moreover, in looking to the totality of the circumstances for a traffic stop, a court must consider the "collective knowledge" of all officers involved in the investigation even if that information is not "communicated to the officer who actually makes the stop."  <u>United States v. Sutton</u>, 794 F.2d 1415, 1426 (9th Cir. 1986).  A possible innocent explanation for a suspect's actions does not undermine reasonable suspicion.  <u>United States v. Tiong</u>, 224 F.3d 1136, 1141 (9th Cir. 2000).  "When interpreting seemingly innocent conduct, the court . . . is entitled to rely on the training and experience of police officers.  <u>United States v. Gil</u>, 58 F.3d 1414, 1418 (9th Cir. 1995).

The Supreme Court has repeatedly held that there is no Fourth Amendment requirement that law enforcement officers obtain a warrant to search an automobile when they have probable cause to believe that it contains contraband or evidence of criminal activity. California v. Acevedo, 500 U.S. 565, 579-80 (1991); United States v. Ross, 456 U.S. 798, 825 (1982). Probable cause to search a vehicle and all its containers arises when officers involved in an investigation collectively know of facts and circumstances sufficient to warrant a reasonable belief that a crime has been committed and the vehicle or a container therein contains evidence of the crime. Acevedo, 500 U.S. at 579-80; United States v. Fouche, 776 F.2d 1398, 1403 (9th Cir. 1985). Probable cause is a "flexible, common-sense standard," Texas v. Brown, 460 U.S. 730, 742 (1983), determined by looking at the totality of the circumstances. Illinois v. Gates, 462 U.S. 213, 230-31 (1983). "A practical, nontechnical probability that incriminating evidence is involved is all that is required for the search." United States v. Vizcarra-Martinez, 66 F.3d 1006, 1011 (9th Cir. 1995) (internal quotation marks omitted). The officers' experience and training, and the deductions and inferences they make, may be considered in determining probable cause. Fouche, 776 F.2d at 1403; see also United States v. Castillo, 866 F.2d 1071, 1080 (9th Cir. 1988) (citing Davis v. United States, 409 F.2d 458, 460 (D.C. Cir. 1969) (1969) ("conduct innocent in the eyes of the untrained may carry entirely different 'messages' to the experienced or trained observer"). In other words, the mere fact that defendant engaged

in facially innocent actions does not mean probable cause cannot exist. See United States v. Del Vizo, 918 F.2d 821, 827 (9th Cir. 1990). In fact, oftentimes law enforcement agents commonly base probable cause on facially innocent activity. See United States v. Rodriquez, 869 F.2d 479, 483 (9th Cir. 1989).

Here, the following facts provided officers with probable cause to reasonably believe that defendant was engaged in a crime when they stopped the Mazda and the Mazda contained narcotics:

(1) Reliable informants told Det. Macias that defendant sold methamphetamine.

(2) Det. Macias knew that defendant had engaged in controlled sales of narcotics in the past.

(3) Another reliable informant told law enforcement that defendant kept "large quantities of methamphetamine" in a storage facility.

(4) On December 11, 2008, detectives saw defendant engage in a hand to hand drug deal with a woman from whom officers recovered approximately 1/4 ounce of methamphetamine.

(5) The day officers searched the Mazda Det. Macias and officers saw the Mazda in which defendant was a passenger engage in counter surveillance driving. Det. Macias knew from following defendant on numerous occasions that defendant would only drive like this when he was in route to a narcotic transaction. In Det. Macias' experience, defendant obeyed all traffic laws when going to a store and driving from place to place. Thus, because of the way the Mazda was driving Det. Macias suspected defendant was driving somewhere where he did not want to be followed. Det.

Macias reached this reasonable conclusion based on his experience with defendant and his extensive experience investigating other narcotics traffickers.

(6) Defendant engaged in counter surveillance on his way to a storage facility.

(7) Det. Macias saw defendant and Brashear remove several bags from defendant's storage facility and load them into the Mazda.

(8) Defendant gave a false name to Deputy Tinoco when he initially stopped the Mazda.

In short, the facts established that defendant was a drug dealer, defendant stored drugs in a storage locker, defendant went to a storage locker the day of the search, defendant was known to engage in counter surveillance driving when he was en route to narcotics transactions, defendant engaged in counter surveillance the day of the search, defendant came out of the storage locker with several black bags that he loaded into a car, defendant drove away from the storage facility, and defendant gave a false name to a law enforcement officer when he was stopped. These facts, coupled with Det. Macias' extensive law enforcement experience and vast experience investigating narcotics trafficking, supported his reasonable belief that defendant had committed a crime, namely, possession of narcotics, and the Mazda contained narcotics. Acevedo, 500 U.S. at 579-80; Fouche, 776 F.2d at 1403. At a minimum, the Court should be satisfied that a "practical, nontechnical probability" existed that a search of the Mazda would yield "incriminating evidence."

See <u>Vizcarra-Martinez</u>, 66 F.3d at 1011. Consequently, the Court should find that the officers traffic stop and warrantless search of the Mazda were justified and deny defendant's motion. <u>Sutton</u>, 794 F.2d at 1426; <u>see</u>, <u>e.g.</u>, <u>United States v. Ocampo</u>, 937 F.2d 485, 489-90 (9th Cir. 1991) (probable cause for drug crime based on anonymous tip, counter-surveillance and tandem driving, a car switch, and beeper activity); <u>United States v. Curtis</u>, 562 F.2d 1153, 1155-56 (9th Cir. (1977)) (probable cause to stop and search two trucks observed approaching airplane believed to contain narcotics, parking near plane for a few minutes, then drive off, initially with headlights off). Furthermore, since officers lawfully searched the Mazda, the Court should not suppress the subsequent search warrant based, in part, on that lawfully obtained evidence.[1]

### III.

### CONCLUSION

For the foregoing reasons, the Court should deny defendant's motion to suppress.

---

[1] The government believes that Det. Macias' affidavit in support of the warrant to search defendant's storage locker set forth sufficient probable cause for issuance of the warrant even without reference to the evidence seized during the search of the Mazda. Should the Court concludes that officers unlawfully searched the Mazda, because the search warrant was facially valid and officers acted in good faith, the Court should apply the good faith exception and not suppress evidence seized pursuant to the search warrant. <u>See</u> <u>United States v. Leon</u>, 468 U.S. 897, 926 (1984). Defendant has not identified any reason why the good faith exception should not apply.

11