SEAN K. KENNEDY (No. 145632)
Federal Public Defender
(E-mail: Sean_kennedy@fd.org)
JOHN LITTRELL (No. 221601)
Deputy Federal Public Defender
(E-mail: John_Littrell@fd.org)
Office of the Federal Public Defender
321 East Second Street
Los Angeles, California  90012
Telephone (213) 894-5310
Facsimile (213) 894-0081

Attorneys for Defendant
JUAN CAMPOS

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,               Plaintiff,       v.   JUAN CAMPOS,               Defendant. | NO. CR 09-572-RGK  REPLY TO GOVERNMENT'S OPPOSITION TO MOTION TO SUPPRESS EVIDENCE  DATE:   November 9, 2009 TIME:   1:30 p.m. JUDGE:  Hon. R. Gary Klausner ROOM:   850 (Roybal) |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    A.    Probable Cause, Not Reasonable Suspicion, is the Standard Applicable To The Seizure and Search Of The Vehicle In This Case. . . . . . . . . . . . 2

    B.    The Officers Lacked Probable Cause to Seize or Search the Vehicle . . 5

        1.    Information Allegedly Received From Informants . . . . . . . . . . . 6

        2.    The Government's Alleged Observation of Mr. Campos in 2008 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

        3.    "Counter-Surveillance Driving".. . . . . . . . . . . . . . . . . . . . . . . . . 10

        4.    Mr. Campos' Retrieval of Bags From His Storage Locker . . . . . 11

        5.    Mr. Campos' Alleged Provision Of A False Name . . . . . . . . . . 11

    C.    Because the Warrant Relied on Facts Obtained During an Unlawful Search; the "Good Faith" Exception Does Not Apply

IV.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

Aguilar v. Texas,
    78 U.S. at 109 (1964). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

California v. Acevedo,
    500 U.S. 565 (1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

United States v. Acevedo,
    500 U.S. 565 (1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Florida v. Bostick,
    501 U.S. 429 (1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Florida v. Royer,
    460 U.S. 491 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4

Illinois v. Gates,
    462 U.S. 213 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

Murray v. United States,
    487 U.S. 533 (1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Ornelas v. United States,
    517 U.S. 690 (1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Terry v. Ohio,
    392 U.S. 1 (1968). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

United States v. Leon,
    468 U.S. 897 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

United States v. Lopez-Soto,
    205 F.3d 1101 (9th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

United States v. Mariscal,
    285 F.3d 1127 (9th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

# TABLE OF AUTHORITIES (continued)

**Page**

**FEDERAL CASES**

United States v. Matlock,
  415 U.S. 164 (1974). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 7, 10, 11

United States v. Miller,
  753 F.2d 1475 (9th Cir. 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

United States v. Miller,
  812 F.2d 1206 (9th Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

United States v. Perez,
  67 F.3d 1371 (9th Cir. 1995), rev'd on other grounds,
  116 F.3d 840 (9th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 10

United States v. Ramirez,
  473 F.3d 1026 (9th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

United States v. Ross,
  456 U.S. 798 (1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 9

United States v. Vasquez,
  858 F.2d 1387 (9th Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10

United States v. Wanless,
  882 F.2d 1459 (9th Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

United States v. Washington,
  387 F.3d 1060 (9th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Washington v. Lambert,
  98 F.3d 1181 (9th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

SEAN K. KENNEDY (No. 145632)
Federal Public Defender
(E-mail: Sean_kennedy@fd.org)
JOHN LITTRELL (No. 221601)
Deputy Federal Public Defender
(E-mail: John_Littrell@fd.org)
Office of the Federal Public Defender
321 East Second Street
Los Angeles, California  90012
Telephone (213) 894-5310
Facsimile (213) 894-0081

Attorneys for Defendant
JUAN CAMPOS

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>              Plaintiff,<br><br>      v.<br><br>JUAN CAMPOS,<br><br>              Defendant. | NO. CR 09-572-RGK<br><br>REPLY TO GOVERNMENT'S OPPOSITION TO MOTION TO SUPPRESS EVIDENCE<br><br>DATE:     November 9, 2009<br>TIME:     1:30 p.m.<br>JUDGE:    Hon. R. Gary Klausner<br>ROOM:     850 (Roybal) |

**I.**

**INTRODUCTION**

The government's sole argument that the seizure and search of the vehicle was lawful is that they were justified under the "automobile" exception to the warrant requirement. But the facts set forth by the government do not establish probable cause to believe that Mr. Campos was engaged in criminal wrongdoing at the time of the seizure or that evidence of a crime would be found in the vehicle. The government does not contest the fact that the warrant to search the storage container was based, at least in part, on information obtained during the search of the vehicle. Therefore, the Court should suppress evidence obtained from both the vehicle and the storage container.

### A. Probable Cause, Not Reasonable Suspicion, is the Standard Applicable To The Seizure and Search Of The Vehicle In This Case

A warrantless seizure and search of a vehicle for evidence of a crime is permissible only where there is probable cause to believe that evidence of a crime will be found in the vehicle. Ornelas v. United States, 517 U.S. 690, 696 (1990).

The government contends that "reasonable suspicion" is the standard for a vehicle stop, based on the case of Terry v. Ohio, 392 U.S. 1 (1968). Terry involved the brief detention of a person based on an officer's firsthand observation of the person and his suspicion that the man's conduct suggested that he was engaged in criminal activity. Id. at 7-8. The Supreme Court held that an officer with an articulable suspicion that a crime was currently underway, but without sufficient information upon which to find probable cause, could stop of an individual in order to conduct only a limited investigation to confirm or dispel the suspicion upon which the stop is based. Id. at 29. But the scope of the investigative detention authorized by Terry "must be carefully tailored to its underlying justification." Florida v. Royer, 460 U.S. 491, 500 (1983).

A Terry stop does not allow for a full-blown arrest or a comprehensive search for evidence of a crime. It allows only for a brief detention for the purpose of investigating the particular suspicion that formed the basis for the stop. See Florida v. Bostick, 501 U.S. 429, 437(1991); Royer, 460 U.S. at 500 ("A seizure becomes unlawful when it is "more intrusive than necessary."); United States v. Washington, 387 F.3d 1060, 1068 (9th Cir. 2004); Washington v. Lambert, 98 F.3d 1181, 1188 (9th Cir. 1996).

Although the Ninth Circuit has upheld the application of Terry's "reasonable suspicion" standard to permit "investigative traffic stops," it has not applied Terry to the seizure of a vehicle for the purpose of conducting a full-blown search for evidence, as in this case. The cases upon which the government relies for the proposition that "reasonable suspicion" justifies a traffic stop all involved an officer's contemporaneous, firsthand observation of a driver violating a traffic law. See Gov.

Opp at 6-7 (citing United States v. Mariscal, 285 F.3d 1127, 1130 (9th Cir. 2002); United States v. Lopez-Soto, 205 F.3d 1101, 1105 (9th Cir. 2000).   In the cases cited by the government, the investigating officer relied on the Terry rationale in order to conduct a traffic stop based on the officer's contemporary observation of a traffic violation, and during a limited period of questioning the driver, which was consistent with the purpose articulated for the initial stop, the officer involved developed probable cause to justify an arrest or subsequent search.  See, e.g, Lopez-Soto, 205 F.3d at 1105 (officer stopped motorist on suspicion of lacking proper registration, and while questioning driver regarding proof of current registration, smelled "pungent odor that he recognized as marijuana").

This case did not involve a Terry stop because the stop in this case was neither brief nor limited in scope, and it was not made for the purpose of conducting a limited investigation, authorized by Terry, to confirm or dispel a suspicion that a crime was underway.  Deputy Virginia Tinoco, the officer who conducted the stop of Mr. Campos, had no independent information tending to suggest that Mr. Campos was engaged in a crime.  She was acting on the orders of Detective Carlos Macias. Moreover, Deputy Tinoco did not undertake any of the intermediate steps authorized by Terry such as looking for evidence in plain view or questioning Mr. Campos regarding where he had come from or what he was doing, that would confirm or dispel any suspicion of wrongdoing that Detective Macias might have had.   Deputy Tinoco simply stopped Mr. Campos' vehicle, under the orders of Detective Macias, who believed that the vehicle seizure was justified by probable cause.  See Declaration of Carlos Macias at ¶ 12.  Having failed to obtain Mr. Campos' consent to search the vehicle, Deputy Tinoco searched the vehicle, over Mr. Campos' objection, pursuant to Detective Macias' orders.

Thus, this case is more analogous to the circumstances in United States v. Ramirez, 473 F.3d 1026 (9th Cir. 2007).  In that case, Glendale police officers knew based on their firsthand observation and search of a vehicle that the defendants were driving  that the vehicle had been previously used, only a few weeks prior, to

1  transport narcotics in a hidden compartment.  Based on that observation, the officer
2  that had inspected the vehicle and found the hidden compartment instructed other
3  officers to follow the vehicle.  While surveilling the vehicle, the officers observed a
4  man placing a large bag in the area of the vehicle where the hidden compartment was
5  located.  They then observed the vehicle "rock back and forth."  They reported these
6  facts to the officer who had inspected the vehicle personally.  Based on those facts,
7  the officer ordered the surveilling officers to conduct a traffic stop.   The officers
8  stopped the vehicle under a pretext of having failed to drive within a single lane, in
9  violation of California law, and subsequently searched the vehicle and found
10 narcotics.   The Court found that the pretext for the stop was faulty, and that there
11 was no reasonable suspicion to believe that the defendants had violated any traffic
12 law.  Id. at 1029.  But the Court then applied the "collective knowledge" doctrine to
13 analyze the traffic stop, as the government has asked this Court to do in this case.
14 See Gov. Opp. at 7.  It held that the lack of reasonable suspicion did not matter
15 because the government had established probable cause as an *alternative* basis  for
16 the seizure.  See id. at 1030 ("[T]he fact that officers acted on one rationale 'would
17 not foreclose the [government] from justifying [the search] by proving probable
18 cause.") (quoting Royer, 460 U.S. at 507).  The Court noted that the seizure was not
19 based on the traffic violation, but on "previously gathered information, aimed at
20 establishing probable cause to search for contraband." Id. at 1031.  Thus,"it [did] not
21 matter that [the officer] was directed to make a 'traffic stop,' nor does it matter
22 whether he had valid grounds to make the traffic stop because of lane-straddling.  If
23 the officers had probable cause, then the seizure and search of the vehicle will be
24 justified."  Id.
25        Likewise, the stop in this case was based on previously gathered information.
26 The officer who ordered the stop, Detective Macias, did not instruct Deputy Tinoco
27 to come up with a pretextual traffic violation, and she did not do so.  Because the
28 stop was not for the purpose of conducting the limited investigation authorized by
   Terry, and because Deputy Tinoco did not take any of the steps authorized by Terry

to confirm or dispel any particular suspicion that may have justified the stop, the stop is unconstitutional unless there was probable cause to justify it.  See California v. Acevedo, 500 U.S. 565, 569-570 (1991) (holding that warrantless search of vehicle is valid only where probable cause is shown); see also United States v. Ross, 456 U.S. 798, 823 (1982) ("[T]he exception to the warrant requirement established in Carroll . . . applies only to searches of vehicles that are supported by probable cause.").

**B.   The Officers Lacked Probable Cause to Seize or Search the Vehicle**

None of the factors identified by the government that existed at the time of the vehicle seizure established probable cause for the seizure.  Probable cause is a flexible standard that is based on the "totality of the circumstances" known to the officer at the time of the seizure.  See Illinois v. Gates, 462 U.S. 213, 228 (1983).  But in considering the weight of the "facts" cited by the government in support of its claim of probable cause, courts must look closely at the *source* of the facts relied on by the government, including both the veracity and the basis of knowledge of persons supplying hearsay information to law enforcement.  Id. at 230.

Because the Federal Rules of Evidence do not "operate with full force" at pretrial suppression hearings, the Court can consider hearsay in determining whether probable cause to justify a warrantless search has been shown.  United States v. Matlock, 415 U.S. 164, 173-74 (1974).  But the Court must carefully consider the source of the evidence it receives, and give that evidence only "such weight as [the Court's] judgment and experience counsel."  Id. at 175.  In determining whether to accept hearsay evidence in the first place, and what weight to give it, the Court should consider the extent to which hearsay evidence is consistent with other evidence in the case and the extent to which the hearsay declarant was motivated to lie, taking into account the declarant's relationship with the defendant.  Id. at 177.  In Matlock, the Supreme Court allowed the government to present testimony by way of hearsay where the declarant was the defendant's wife, who was in the courtroom and available to be cross-examined, and the hearsay statements the government relied on were thought to

5

be reliable because they were against the declarant's penal interests. Because the circumstances of the statements were trustworthy and verifiable, and the declarant was in court and available to be cross-examined, the Supreme Court held that the district court properly considered her hearsay statements at the motion hearing. Id.

Here, although some of the facts to which the government points in support of its case were observed firsthand by Detective Macias -- the sole witness whose testimony is proffered by the government -- most of the facts are derived from anonymous or unidentified sources. The government has not indicated whether any of the hearsay witnesses identified in the declaration of Carlos Macias (an unnamed detective, and one or more unnamed informants) will be present in Court and available to be cross-examined. There is almost no basis by which to determine whether the hearsay statements repeated in Detective Macias' declaration are true.

### 1. Information Allegedly Received From Informants

The Government contends that probable cause existed at the time of the seizure of the vehicle based on information that Detective Macias allegedly learned from informants, either directly or indirectly (from reports provided to him by other, unnamed detectives). Gov. Opp. at 9. To the extent that the probable cause showing in this case depends on information obtained from informants, the government has the burden of establishing that the informants themselves, and the information they supplied, were reliable and timely. See Gates, 462 U.S. at 230 (1983); United States v. Miller, 753 F.2d 1475 (9th Cir. 1985). A bare, unsupported statement that an informant is "reliable" is insufficient to establish an informant's reliability. See Gates, 462 U.S. at 228 (citing Aguilar v. Texas, 378 U.S. at 109 n. 2 (1964)).

The government has not indicated who the informant or informants referenced in Detective Macias' declaration were, and there has been no showing with respect to the nature or reliability of the information that originated from informants in this case. It has done nothing more than allege, without establishing any foundation, that the informants are "reliable," just as the government did in Gates and Aguilar. It is not

clear whether the information that came to Detective Macias *via* informants was based on the informants' personal knowledge or based on a mere, unsupported rumor. Nor has the government indicated precisely what the informants told Detective Macias, other than generalized statements that Mr. Campos "sold methamphetamine" and that controlled buys of methamphetamine had been made from Mr. Campos. Declaration of Carlos Macias at ¶ 4. In his declaration, Detective Macias also references information he learned from another, unnamed detective, whose information was received from another unnamed informant, that Campos was "running a stolen property operation from a storage facility somewhere in the El Rio or Saticoy area" and that he had "large quantities of methamphetamine in this storage facility" Declaration of Carlos Macias at ¶ 4. Mr. Campos objects to the Court's consideration of these statements in that they are hearsay or double-hearsay and there has been no showing whatsoever that the information is accurate or up-to-date. Unlike the declarant in Matlock, who was available for cross-examination, and whose statements were reasonable, corroborated, and, trustworthy, the government has identified no reason to place confidence in the statements attributed to the unnamed informants referenced by Detective Macias. See Matlock, 415 U.S. at 173-74.

Even assuming the information supplied by the informants were trustworthy, and even assuming it was based on a personal observation, however, none of the informants who spoke to Detective Macias apparently supplied any information that Mr. Campos was *currently* engaging in methamphetamine transactions, that he was engaged in a drug transaction at the time his vehicle was seized, or that evidence of such a transaction would be found in his vehicle on the day it was seized. Likewise, the Declaration of Carlos Macias does not indicate *when* Mr. Campos is alleged to have "stored 'large quantities of methamphetamine in [the] storage facility.'"

The disconnect between the facts establishing the suspicion and the particular vehicle to be searched distinguishes this case from others in which probable cause was found based on information from informants. In United States v. Perez, 67 F.3d 1371, 1375-76 (9th Cir. 1995), rev'd on other grounds, 116 F.3d 840 (9th Cir. 1997),

the defendant was suspected of engaging in a transaction of stolen coins when a coin dealer reported to police that he had recently purchased the coins from the defendant. Four days after the transaction, the coin dealer lured the defendant back to his shop by stopping payment on his check to the defendant. When the defendant arrived, the officers arrested her. The officers subsequently searched the defendant's car and recovered additional evidence unrelated to the stolen coins. The Ninth Circuit held that there was no probable cause to support the warrantless search of the defendant's vehicle. Id. at 1376. The Court noted that although there was clear evidence of criminal wrongdoing based on the report of the coin dealer, there was no evidence linking the crime to the defendant's vehicle on the day it was searched. The Court distinguished cases in which it had found probable cause to search a vehicle based on more recent information or observation tending to establish that contraband would be found inside. Id. (quoting United States v. Vasquez, 858 F.2d 1387, 1391 (9th Cir. 1988), in which the Court found that "fresh, direct, and uncontradicted evidence" that defendant was selling cocaine from his vehicle). Likewise in this case, even if the Court were to credit the information allegedly received from informants, and even taking into account the government's observation of Mr. Campos engaging in what the government believed to be a drug transaction in December 2008, the government has not established that there was probable cause that Mr. Campos' retrieval of bags from his storage unit on May 12, 2009, five months later, was also related to a drug transaction. See United States v. Wanless, 882 F.2d 1459, 1466 (9th Cir. 1989) (no probable cause to search defendant's vehicle where officers observed "track marks" on the defendant's arms and defendant admitted that he used drugs two days hence, those facts alone were insufficient to establish that the evidence of the defendant's drug use would be found in the vehicle on the day of the search).

     In this case, as in Perez and Wanless, although there were some facts tending to establish that Mr. Campos may have been involved in criminal activity at some point (assuming that the information supplied by the informants is trustworthy,) there were no facts that tended to establish that evidence of the crime would be found in

8

1  Mr. Campos' vehicle on the day of the search. The analysis might be different if, for
2  example, the informant had personally been in the storage container or the vehicle
3  before and had personal knowledge of where the narcotics were kept. See, e.g., Ross,
4  456 U.S. at 823 (seizure of vehicle justified where informant told police that he had
5  seen the defendant complete a drug transaction using drugs stored in the trunk of his
6  car). The analysis may also have been different if the officers had viewed any
7  criminal conduct or evidence of a crime firsthand. See, e.g., United States v.
8  Acevedo, 500 U.S. 565, 567 (1991) (Seizure and search of vehicle justified where
9  narcotics officers viewed, firsthand, a man bringing a package of marijuana into his
10 home and defendant emerged from the home shortly thereafter bearing package that
11 looked similar to package officers knew to contain marijuana); United States v.
12 Miller, 812 F. 2d 1206, 1209 (9th Cir. 1987) (probable cause to search a vehicle
13 existed where the defendant was known to be a methamphetamine manufacturer *and*
14 the officers who conducted the search of the vehicle both smelled the unmistakable
15 odor associated with methamphetamine production *and* the officers saw a handgun in
16 plain view in the vehicle). But a mere, uncorroborated, tip that Mr. Campos had been
17 engaged in drug trafficking at some point in the past, coupled with an uncorroborated
18 tip that he may have had methamphetamine in his storage container at some point in
19 the past, is insufficient to establish probable cause that Mr. Campos had
20 methamphetamine in his storage container on the day his vehicle was searched, or
21 that he was engaged in a drug transaction involving the methamphetamine that day.

22              2.    The Government's Alleged Observation of Mr. Campos in 2008
23        As noted herein, the government also submits the probable cause existed
24 based on the fact that "detectives" allegedly observed Mr. Campos engage in a hand-
25 to-hand drug transaction on December 11, 2008 – five months prior to the seizure of
26 the vehicle in this case. See Gov. Opp. at 9; Declaration of Carlos Macias at ¶ 4.
27        The government has identified no witness to any drug transaction and has set
28 forth no foundation for its claim that Mr. Campos engaged in a drug transaction on

December 11, 2008.  The government has not offered any evidence of where the transaction took place, how it was conducted, or what Mr. Campos' role in the transaction was.  Finally, the government has not introduced any evidence that Detective Macias knew of the alleged drug transaction at the time he ordered the stop of Mr. Campos' vehicle.  Therefore, the government's claim that Mr. Campos engaged in a hand-to-hand drug transaction on December 11, 2008, should be rejected.  See Matlock, 415 U.S. at 173-74.  Even if the government were to establish that Mr. Campos had engaged in a drug transaction on December 11, 2008, and that Detective Macias knew about it, that drug transaction, which occurred more than five months previously, does not establish probable cause that Mr. Campos was also engaged in a drug transaction at the time his vehicle was seized, five months later, or that narcotics would be found in his vehicle or his storage container on that date.  See Perez, 67 F.3d at 1375-76 (quoting Vasquez, 858 F.2d at 1391).

### 3. "Counter-Surveillance Driving"

Finally, the government contends that, on the day of the seizure in this case, Detective Macias "saw *the Mazda in which defendant was a passenger* engage in counter-surveillance driving."  Gov. Opp. at 9 (emphasis added).  In his declaration, Detective Macias states, without foundation, that in his experience, which included following Campos on "numerous occasions," Mr. Campos "would only drive like this when he was [e]n route to a narcotic transaction."  Declaration of Carlos Macias at ¶ 7.  He further states, also without foundation, that Mr. Campos "obeyed all traffic laws when going to a store and driving from place to place."  Id.

Mr. Campos denies that "the Mazda in which he was a passenger" was engaged in counter-surveillance driving on the date of the seizure.  But the allegations made by Detective Macias about "counter-surveillance driving" fail to establish any individualized suspicion about Mr. Campos anyway.  First, Detective Macias fails to state how he determined, during his prior observations of Mr. Campos' driving, whether or not Mr. Campos was en route to a drug transaction.  To the extent that

Detective Macias had ever actually witnessed Mr. Campos engage in a drug transaction, why was that not indicated in his declaration as a fact tending to establish probable cause? And to the extent that Detective Macias believes he followed Mr. Campos as he conducted activities that were not drug transactions, what was his basis for concluding that Mr. Campos was not engaged in drug trafficking on those occasions? But even assuming Detective Macias had a foundation for believing that he could determine whether or not Mr. Campos was engaging in a drug transaction based on the way he was driving, what relevance did that knowledge have in this case since, as the government acknowledges, Mr. Campos was not the person driving?

### 4. Mr. Campos' Retrieval of Bags From His Storage Locker

Mr. Campos' retrieval of bags from his storage locker, see Gov. Opp. at 9-10, standing alone, did not supply probable cause to seize the vehicle.

### 5. Mr. Campos' Alleged Provision Of A False Name

The government also points to an additional fact which it contends came to light after the seizure of the vehicle, but before the search of the vehicle. Detective Macias contends, without foundation, that Mr. Campos provided a false name to Deputy Tinoco. See Gov. Opp. at 10; Declaration of Carlos Macias at ¶ 11.

Mr. Campos denies that he provided a false name. Detective Macias, who was not present during the vehicle stop itself, has no foundation for saying otherwise. Mr. Campos respectfully requests that the portion of Detective Macias' declaration in which he indicates that Mr. Campos provided a false name to Deputy Tinoco when he was stopped be stricken and disregarded. See Matlock, 415 U.S. at 173-74..

Alternatively, to the extent that the Court considers the government's contention that Mr. Campos provided a false name relevant to the probable cause analysis and gives Detective Macias' hearsay declaration any weight, Mr. Campos respectfully requests a hearing and an opportunity to examine Deputy Virginia Tinoco and any other officer who was present during the vehicle stop on the issue.

### C. Because the Warrant Relied on Facts Obtained During an Unlawful Search, the "Good Faith" Exception Does Not Apply

The government contends that the warrant would have established probable cause to search Mr. Campos' storage container, even if the fruits of the unlawful search in this case were redacted. Gov. Opp. at 11, n.1. But for the reasons set forth herein, the facts upon which the government relied in the search warrant – vague tips from unidentified informants, a claim, without any foundation, that Mr. Campos engaged in a drug transaction six months prior to the stop, and erratic driving done by someone other than Mr. Campos, are too vague and lacking in foundation to supply probable cause. Absent reference to the evidence seized from Mr. Campos' vehicle, and an application for a warrant would likely have been rejected by a neutral magistrate. Nor has the government established that the officers would sought a warrant based on the limited information that it had prior to the unlawful seizure and search of the vehicle. See Murray v. United States, 487 U.S. 533, 543 (1988).

To the extent that the warrant was based on the fruits of an unlawful search, it was not "facially valid." Therefore, United States v. Leon, 468 U.S. 897 (1984), in which the Court held that the exclusionary rule does not apply to evidence obtained pursuant to a facially valid warrant applied for in good faith, does not apply. Leon's holding was premised on the idea that suppression of evidence obtained via a facially valid warrant issued by a detached and neutral magistrate does not further the goal of deterring police misconduct and unconstitutional invasions of privacy.[1] Id. at 922.

---

[1] Leon involved an application for a warrant based on facts that were in some ways similar to the facts of this case – police officers based their decision to search on information from an informant whose credibility they had not established to the Court. 468 U.S. at 901-02. But in Leon, the officers corroborated the tip by conducting additional investigation, during which they witnessed the defendants engaged in conduct consistent with their suspicion of drug trafficking. Nonetheless, the Ninth Circuit held that the government had failed to establish probable cause for the issuance of a search warrant because it failed to set forth facts establishing the credibility of the informant. The Supreme Court did not rule on the issue of probable cause, holding that the "good faith exception" cured the defect. Id. at 926.

Because the warrant was based, in this case, on evidence that was obtained in violation of the Fourth Amendment, the warrant was not "facially valid" and the "good faith" exception to the Exclusionary Rule does not apply.

## IV. CONCLUSION

For the foregoing reasons, the evidence recovered from the vehicle and the evidence recovered from the storage locker must be suppressed.

Respectfully submitted,

SEAN K. KENNEDY
Federal Public Defender

DATED:   November 2, 2009       By          /S/
                                JOHN LITTRELL
                                Deputy Federal Public Defender